UNC RESOURCES, INC., a Virginia corporation; United Nuclear Corporation, a Delaware corporation; and UNC Mining & Milling Services, Inc., a Delaware corporation, Plaintiffs,

v.

Kee Joe BENALLY, Census No. 90261, and Betty C. Benally, Census No. 61430, husband and wife; John Begay, Census No. 60035, and Shirley Begay, Census No. 11060–A, husband and wife; Mary Louise Yellowhorse, Census No. 37482; Walter Johnson, Census No. 60210, and Esther Johnson, Census No. 60858, husband and wife; Nasbah Russell, Census No. 58857; Betty Barney, Census No. 63304; Mary Ruth Joe, Census No. 39346; Mary B. Tsosie, Census No. 61847; Ga De Bah Smith and James and Irene Smith; Fred Adakai, Census No. 62512, and Lenita Adakai, Census No. 63792, husband and wife; Billy Chee, Census No. 61269, and Irene Chee, Census No. 33544, husband and wife; Kieyone Begay, Census No. 6392, and Mary Haley Begay, Census No. 41738, husband and wife; and John Kenneth Billy and Betty Rose Billy, husband and wife; individually and as representatives of a Class composed of themselves and all other persons similarly situated, Defendants.

No.Civ. 80–749 PCT VAC.

United States District Court,
D. Arizona.

July 16, 1981.

Douglas L. Irish, Marty Harper, and Jose Cardenas, Phoenix, Ariz., Russell Moore, Keleher & McLeod, Albuquerque, N. M., Michael Comeau, Bigbee, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N. M., for plaintiffs.

Michael C. Nelson, Wayne H. Bladh, and Alan R. Taradash, DNA-People's Legal Services, Inc., Window Rock, Ariz., for defendants.

## OPINION

CORDOVA, District Judge.

This matter is before the Court on plaintiff's application for preliminary injunction, to enjoin defendants from pursuing their claims in Navajo Tribal Court, and on defendants' motion to dismiss for lack of jurisdiction. For the reasons below, the preliminary injunction will issue; the motion to dismiss will be granted in part.

## FACTS

Plaintiff United Nuclear Corporation [1] owns and operates a uranium mill and tail-

---

1. UNC Resources, Inc., is the parent corporation of both United Nuclear Corporation and UNC Mining & Milling Services, Inc. All are

ings pond near Churchrock, New Mexico. These facilities are located on fee land south of the Navajo reservation. On July 16, 1979 the containment structure of the tailings pond failed, releasing liquid and solid tailings into the Puerco River. The course of the river carried this radioactive waste material across the New Mexico-Arizona state line and onto the Navajo reservation in Arizona.

Several Navajos, including the named defendants in this case,[2] filed civil suits against UNC in the Navajo Tribal Court seeking compensatory and punitive damages for personal injuries and property damage sustained as a result of the spill. UNC anticipates that other such actions will be instituted and that Navajo claims against it will exceed $30 million. UNC filed the present action, as well as an identical suit in the United States District Court for the District of New Mexico,[3] to obtain preliminary and permanent injunctions barring members of the defendant class from instituting or pursuing their claims in the Tribal Court. UNC also seeks a declaratory judgment that the Tribal Court does not have jurisdiction over it and a declaration that it is not liable to defendants as a result of the spill.

## MOTION TO DISMISS

UNC's complaint alleges that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1337, 1343(4), 2201, et seq., and 1651. Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure defendants moved to dismiss, asserting that none of these statutes confer subject matter jurisdiction. In its response UNC concedes that §§ 2201, et seq. (Declaratory Judgment Act), and 1651 (All Writs Act), do not provide an independent basis for jurisdiction, and it is clear that § 1343(4) (civil rights), is inapplicable and of no benefit to UNC here. *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474, 476 n.3 (9th Cir. 1980). *See Moore v. Johnson*, 582 F.2d 1228, 1231 (9th Cir. 1978).

■ It is unnecessary to pass upon the applicability of sections 1332 (diversity), and 1337 (acts regulating commerce), since the Court concludes that it has jurisdiction under § 1331 (federal question).[4] This case presents the substantial federal question of whether the Navajo Tribal Court has civil jurisdiction over UNC under the present circumstances. As indicated below, that question can only be resolved by considering the impact of treaties, statutes and overriding federal interests on the inherent sovereignty of the Navajo Tribe. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208–09, 98 S.Ct. 1011, 1020–21, 55 L.Ed.2d 209 (1978). Accordingly, the Court concludes that this action arises under the treaties and laws, if not the Constitution,[5] of the

plaintiffs in this case and are hereinafter referred to collectively as "UNC".

2. The named defendants are representatives of a class composed of all Navajo Indians who have claims against UNC arising out of the spill in question. The class was certified for limited purposes, including the application for preliminary injunction, by this Court's order of March 12, 1981.

3. *UNC Resources, Inc. v. Benally*, 514 F.Supp. 358, No. 80–750 HB (D.N.M.)

4. Section 1331 provides: "The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. In *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474, 476–77 (9th Cir. 1980), the Ninth Circuit stated that: "Con-

stitutional guarantees ... are not applicable to the exercise of governmental powers by an Indian tribe except to the extent that they are made explicitly binding by the Constitution or are imposed by Congress." The Court ruled that the District Court erred in asserting federal question jurisdiction on the basis of Fourteenth Amendment violations under *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Since there was "no other basis for federal jurisdiction over this dispute," the Court held that the complaint should have been dismissed. 634 F.2d at 477. *Trans-Canada* is thus distinguishable from this case where there is a real and substantial dispute between the parties as to the construction and effect of treaties, statutes and general federal interests to justify the assertion of federal question jurisdiction. *Boe v. Fort Belknap Indian Community*, 642 F.2d 276, 279 (9th Cir. 1981).

United States within the meaning of § 1331.

Congress has eliminated some difficult jurisdictional issues from this case by deleting the jurisdictional amount requirement of § 1331. Pub.L.No.96–486, § 2(a), 94 Stat. 2369. Since that amendment is applicable to "any civil action pending" on December 1, 1980, and this action was filed on September 16, 1980, it is not necessary to address whether UNC has demonstrated the requisite amount in controversy as to its request for a preliminary injunction or shown that the doctrine of pendent jurisdiction is applicable to that claim.

Even though the Court has concluded that it has jurisdiction over the application for preliminary injunction, it will not exercise its discretion to consider the merits of UNC's request for a declaratory judgment of non-liability. This conclusion is mandated by the rule that it is not one of the purposes of the declaratory judgment act to enable a prospective negligence action defendant to obtain a declaration of non-liability. *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir.) *cert. denied*, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); *Frito-Lay, Inc. v. Dent*, 373 F.Supp. 771, 773 (N.D.Miss.1974); 10 C. Wright & A. Miller, Federal Practice & Procedure § 2765 (1973).

The Court will also decline UNC's request for a bill of peace to consolidate all of the Tribal Court suits against it into a single proceeding in this Court. Since the Tribal Court actions will be enjoined, there is no basis for such equitable relief.

Defendants' motion to dismiss will be granted to the extent of the declaratory judgment of non-liability and the bill of peace; in all other respects the motion will be denied.

## TRIBAL COURT JURISDICTION

UNC's application for preliminary injunction raises novel questions concerning the sources and scope of civil jurisdiction of the Navajo Tribal Court over non-Indians. On February 13, 1980 the Navajo Tribal Council approved a resolution extending civil jurisdiction of the Tribal Court over defendants who have "caused an action to occur in Navajo Indian country."[6] Assuming for present purposes that the resolution is valid without approval of the Secretary of the Interior[7] and that it may be applied retroactively to the July 16, 1979 spill,[8] the issue reduces to whether the Tribe has the power to assume civil jurisdiction over a non-Indian defendant whose allegedly tortious conduct occurred off the reservation.

While the Supreme Court has not passed directly upon the question before this Court, it has long recognized that Indian tribes no longer possess the full attributes of sovereignty. *Montana v. United States*, —— U.S. ——, 101 S.Ct. 1245, 67 L.Ed.2d

---

**6.** The resolution provides in part: "The civil jurisdiction of the Courts of the Navajo Nation is hereby amended to include civil actions in which the defendant is a resident of Navajo Indian country, or has caused an action to occur in Navajo Indian country." Resolution CF–19–80.

**7.** UNC contends that the resolution is not valid until approved by the Secretary of the Interior under the requirements of 25 C.F.R. Part 11 and the Navajo Tribal Code. 7 N.T.C. § 1(e). The defendants argue that 26 C.F.R. Part 11 is no longer applicable since pursuant to 26 C.F.R. § 11.1(e) the Navajo Tribal Council abolished the Courts of Indian Offenses and established Navajo Tribal Courts. Resolution CJA–1–59. The defendants also contend that Secretarial approval is not required by the Tribal Code. *Navajo Tribe v. Holyan*, 1 Nav.R. 78 (1973), and that in any event it was determined

by the Tribal Operations Officer for the Navajo Area Office of the Bureau of Indian Affairs, after consultations with the Department of Interior, the Navajo Area Field Solicitor's Office and the Navajo Area Director, that this resolution was a Class C resolution not requiring approval by the Secretary.

**8.** UNC asserts that it is doubtful that the resolution may be applied retroactively to enlarge the Tribal Court's subject matter jurisdiction over a set of facts which previously occurred, citing *State v. Augustine*, 197 Kan. 207, 416 P.2d 281 (1966). The defendants, on the other hand, suggest that the resolution is remedial in nature and does not impair any vested right of UNC and thus may be given retroactive application. *See, e. g., Gibbes v. Zimmerman*, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933).

493 (1981) (Montana); *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *United States v. Kagama*, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); *Worchester v. Georgia*, 6 Pet. 515, 8 L.Ed. 483 (1832). The tribes have been characterized as "quasi-sovereigns", *Fisher v. District Court*, 424 U.S. 382, 390, 96 S.Ct. 943, 948, 47 L.Ed.2d 106 (1976) (per curiam), and it has been noted that the sovereignty of tribes is different from that of states. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980) (*Bracker*). See *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 165, 100 S.Ct. 2069, 2087, 65 L.Ed.2d 10 (1980) (Brennan, J., concurring in part and dissenting in part) (*Colville*).

The Supreme Court has suggested the following analysis for ascertaining the limits of tribal sovereignty. The tribes retain those powers of self-government not voluntarily relinquished by treaty, not divested by Congressional enactment, and not inconsistent with the overriding sovereign interests of the United States. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208–09, 98 S.Ct. 1011, 1020–21, 55 L.Ed.2d 209 (1978) (*Oliphant*). See *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (*Wheeler*). The tribes may also exercise those powers that would otherwise be inconsistent with overriding federal interests if Congress has explicitly delegated such powers to them. *Montana, supra*, 101 S.Ct. at 1257. See *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973).

In applying this analysis to the present case the Court does not find anything in the relevant treaties[9] which would support the proposition that the Navajo Tribe has ex-

plicitly relinquished by treaty civil jurisdiction over non-Indians. *Cf. Wheeler, supra*, 435 U.S. at 324, 98 S.Ct. at 1086 (Navajo Tribe gave up power to try Navajos who commit crimes against non-Indians in treaties of 1850 and 1868). In reaching this conclusion the Court is guided in part by the rule that ambiguities in treaties are to be resolved in favor of the Indians. *Oliphant, supra*, 435 U.S. at 208 n.17, 98 S.Ct. at 1020 n.17.

▇ Similarly, UNC has not pointed to any specific federal statute that would preclude the Tribal Court from hearing the claims raised by the Navajos against UNC. The only potentially applicable provision is 42 U.S.C. § 2210(n)(2) which confers original jurisdiction on the United States District Courts, without regard for diversity of citizenship or the amount in controversy, over any public liability action arising out of an extraordinary nuclear occurrence. This section does not apply to the present circumstances, however, since there is nothing in the record to indicate that the Secretary of Energy[10] has designated the spill as an extraordinary nuclear occurrence as required by 42 U.S.C. § 2014(j).

With respect to the third stage of the analysis, UNC argues that the exercise of Tribal Court jurisdiction over it would be inconsistent with overriding federal interests and thus is not among the retained powers of the Tribe. UNC maintains that this conclusion is dictated by the Supreme Court's *Oliphant* decision. *Oliphant, supra*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209. In that case the Court held that Indian tribes do not retain the power to exercise criminal jurisdiction over non-Indians. Justice Rehnquist reasoned that the power of the tribes to restrict the personal liberty of

**9.** The three treaties involved here are: (1) the 1848 Treaty of Guadalupe Hidalgo with the Republic of Mexico which placed all Indians in the ceded territory "under the exclusive control of the Government of the United States." 9 Stat. 922; (2) the 1850 Treaty with the Navajos, 9 Stat. 974; and (3) the 1868 Treaty with the Navajos, 15 Stat. 667.

**10.** The statutory duty to determine whether an incident rises to the level of an extraordinary

nuclear occurrence was originally imposed on the Atomic Energy Commission. 42 U.S.C. § 2014(f), (j). When the Atomic Energy Commission was abolished in 1975 the duty was transferred to the Administrator of the Energy Research and Development Administration, 42 U.S.C. § 5814(c), and later in turn transferred to the Secretary of Energy. 42 U.S.C. § 7151(a).

United States citizens conflicts with the overriding interests of the federal government in protecting its citizens "from unwarranted intrusions on their personal liberty." *Id.* at 210, 98 S.Ct. at 1021.

The defendants and amicus curiae [11] contend that *Oliphant* should be limited to criminal cases since the Court itself noted that it was only concerned with the criminal jurisdiction of tribal courts. *Id.* at 196 n.7, 98 S.Ct. at 1014 n.7. This contention must be rejected in light of the Supreme Court's recent *Montana* opinion. *Montana, supra,* 101 S.Ct. 1245. There the Court stated: "Though *Oliphant* only determined inherent tribal authority in criminal matters, the principles on which it relied support the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 1258 (footnote omitted).

The Court in *Montana* further supported its "general proposition" that tribes do not have sovereign powers over non-Indians with the following interpretation, through its emphasis of certain phrases, of its prior opinion in *United States v. Wheeler*:

> The [*Wheeler*] Court distinguished between those powers retained by the tribes and those divested:
>
> > The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving *the relations between an Indian tribe and nonmembers of the tribe* ....
> >
> > These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently *to determine their external relations.* But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve *only the relations among members of a tribe.* Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status.

101 S.Ct. at 1257, *quoting Wheeler, supra,* 435 U.S. at 326, 98 S.Ct. at 1087 (emphasis added by Court in *Montana*).

The Supreme Court recently noted that it has "repeatedly emphasized that there is a significant geographical component to tribal sovereignty." *Bracker, supra,* 448 U.S. at 151, 100 S.Ct. at 2587. *See Colville, supra,* 447 U.S. at 166, 100 S.Ct. at 2088 (Brennan J., concurring in part and dissenting in part). Even more recently, in the *Montana* case, the Court concluded that the territorial sovereignty of a tribe does not even extend to all portions of the reservation as it held that the Crow Tribe could not regulate hunting and fishing by non-Indians on non-Indian lands within the reservation. *Montana, supra,* 101 S.Ct. 1245. Even though tribal regulation was limited to reservation lands, the Court found that the regulatory scheme, as it related to non-Indians on non-Indian land, did not bear a "clear relationship to tribal self-government or internal relations," and thus was not within the retained powers of the tribe. *Id.* at 1258.

In light of the foregoing principles this Court concludes that the Tribal Court is without power to exercise jurisdiction over UNC in the pending tribal suits. The exercise of such jurisdiction would be inconsistent with the general proposition that tribal sovereignty does not extend to the activities of nonmembers of the tribe. Moreover, even though the injuries occurred on the reservation, the attempt to provide a tribal forum to redress such injuries cannot be said to be clearly related to tribal self-government or internal relations since UNC's allegedly tortious conduct occurred off the reservation. Indeed, as noted above, UNC's tailings pond is located in New Mexico, whereas the Navajo defendants before this Court reside on the reservation in Arizona. As such UNC's activities giving rise to the dispute are beyond the territorial sovereignty of the tribe. Furthermore, this Court agrees with the conclusion of Judge Bratton in the parallel

11. The Land and Natural Resources Division of the Department of Justice has filed an amicus curiae brief on the issue of Tribal Court jurisdiction.

New Mexico case, *UNC Resources, Inc. v. Benally*, 514 F.Supp. 358 (D.N.M.1981), that the power to assess civil penalties is the power to invade interests of the type the United States has a concern in protecting. Accordingly, under the circumstances of this case, the exercise of civil jurisdiction by the Tribal Court is inconsistent with the overriding interest of the federal government in preventing unwarranted intrusions on protected property interests.

The facts here suggest to the Court that the assertion of tribal jurisdiction over the present dispute also conflicts with the superior federal interest in regulating the production of nuclear power. The development of nuclear power has been a uniquely national concern since the enactment of the Atomic Energy Act of 1946. Ch. 724, 60 Stat. 755. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 63, 98 S.Ct. 2620, 2625, 57 L.Ed.2d 595 (1978); *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 489 F.Supp. 699, 702 (E.D.Cal. 1980). In 1954 Congress provided for private construction, ownership and operation of commercial nuclear reactors under the supervision of the Atomic Energy Commission. Atomic Energy Act of 1954, ch. 1073, 68 Stat. 919. Five years later Congress enacted a provision, 42 U.S.C. § 2021 to enable the states to assume nuclear regulatory authority upon agreement with the Atomic Energy Commission. Pub.L.No.86–373, § 1, 73 Stat. 688. Pursuant to section 2021 New Mexico assumed regulatory authority on May 1, 1974, Radiation Protection Act, N.M.Stat.Ann. §§ 74–3–1 *et seq.* (1978), and on May 3, 1977 it issued a radioactive materials license for UNC's uranium mill.

The defendants argue that the assertion of jurisdiction by the Tribal Court would not conflict with any federal interest in nuclear power since the federal government has ceded certain aspects of its jurisdiction over nuclear power to New Mexico. This argument overlooks the Congressional finding in 1954 that byproduct material, such as the tailings involved here, is to be regulated "in the national interest." 42 U.S.C. §§ 2012(c)(d), 2014(e). This finding has never been repealed and the mere fact that Congress has chosen to allow the States to assume a more active hand in protecting against the radioactive hazards of producing nuclear energy does not lessen the federal concern for the "common defense and security" as well as the federal desire to "protect the health and safety of the public." § 2012(d). *See Northern States Power Co. v. Minnesota*, 447 F.2d 1143 (8th Cir. 1971), *aff'd*, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). More significantly, it is abundantly clear that in providing for a system of turnover agreements between the United States and individual States, Congress had no intention of granting any control over the nuclear power industry to Indian tribes.

The Court determines that the exercise of Tribal Court jurisdiction in the pending case is not among the retained powers of the Navajo Tribe since such jurisdiction conflicts with the overriding federal interests in preventing unwarranted intrusions of protected liberties and in regulating the production of nuclear energy. The assumption of jurisdiction over UNC in this case is not necessary to protect tribal self-government or to control internal relations and so cannot survive without express Congressional authorization. *Montana, supra*, 101 S.Ct. at 1257. Congress has not delegated such power to the Tribe. Therefore, when the Tribal Council approved the resolution extending civil jurisdiction to include suits such as this, it was asserting a power it does not possess.

Finally, as the Supreme Court indicated in *Oliphant*, it does not matter that the Navajo Tribal Court may have become an "increasingly sophisticated" tribunal resembling its state counterparts in many respects. *Oliphant, supra*, 435 U.S. at 211–12, 98 S.Ct. at 1022. This is a consideration for Congress to consider in deciding whether Indian tribes should be given jurisdiction over non-Indians in cases such as this. *Id.* at 212, 98 S.Ct. at 1022.

## APPLICATION FOR PRELIMINARY INJUNCTION

 The Ninth Circuit has set out two possible bases on which a preliminary injunction may be granted:

. .A party who seeks a preliminary injunction must demonstrate both probable success on the merits and the possibility of irreparable injury. In the alternative the party may show that the case raises serious questions and that the balance of hardships tips in his favor. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975).

*Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir. 1980).

It appears that UNC has met both tests here. As indicated above, it seems very probable that UNC will prevail on its claim that the Navajo Tribal Court lacks jurisdiction over it. UNC would also be faced with the possibility of irreparable injury if it were forced to appear and defend in Tribal Court. Since there is no avenue of appeal or other recourse to another forum from the Tribal Courts, UNC would effectively be denied the opportunity to avoid the overreaching tribal jurisdiction if this Court were to deny the request for an injunction.

As to the alternative test, this case does present substantial and serious questions about the scope of Tribal Court civil jurisdiction. Additionally, it appears that the balance of hardships tips in favor of UNC since the defendants' injuries may be redressed in a federal or state court of competent jurisdiction.

Accordingly, this Court concludes that a preliminary injunction should issue to enjoin the defendants and the class they represent from instituting or further pursuing claims against UNC in the Navajo Tribal Court arising out of the spill in question.