SWIFT TRANSPORTATION, INC., an Arizona corporation, and Ronald M. Hafner, a single man, Plaintiffs and Petitioners,

v.

Mary JOHN, a widow; Katie Mae John, a single person; Katie Mae John, as next friend of Rodney John and Phillip Jerome John, minors; Mary Lou Goldtooth, individually, and Mary Lou Goldtooth, as next friend of Randi Lou Goldtooth and Raini Lou Goldtooth, minors; Robert Walters, in his official capacity as Judge of the District Court of the Navajo Nation, Tuba City, District, Arizona; The Navajo Tribal Courts, by and through its Chief Justice, Nelson McCabe; The Navajo Indian Tribe, through its Chairman, Peter McDonald, Defendants and Respondents.

No. CIV 81-1555 PCT VAC.

United States District Court, D. Arizona.

Sept. 3, 1982.

Daniel J. Stoops, Mangum, Wall, Stoops & Warden, Flagstaff, Ariz., for plaintiffs and petitioners.

Martha Blue, Ward, Blue & Itschner, P. A., Flagstaff, Ariz., for the individual defendants and respondents.

Katherine Ott, Vlassis & Ott, Phoenix, Ariz., for The Navajo Tribe, The Navajo Tribal Courts and The Navajo Officials.

## OPINION

CORDOVA, District Judge.

This matter is before the Court on plaintiffs' application for preliminary injunction and on two motions to dismiss filed by defendants. For the reasons below, an injunction will issue and the motions to dismiss will be denied.

## FACTS

On or about November 13, 1980 members of two Navajo families, the Johns and the Goldtooths, filed a complaint in the District Court of the Navajo Nation, Tuba City District. *John v. Hafner,* No. TC–CV–468–80. The complaint seeks damages for personal injuries and property damage from defendants Ronald M. Hafner and Swift Transportation, Inc., who are nonmembers of the Tribe and non-residents of the Navajo Reservation. The complaint alleges that Hafner, while acting within the scope of his employment with Swift, negligently caused a collision with a pickup truck driven by Katie John. Jurisdiction is alleged under the Tribal Council's Resolution of February 13, 1980, a provision which extended civil jurisdiction to defendants who have "caused an action to occur in Navajo Indian coun-

try."[1] The September 5, 1980 accident occurred on U.S. Highway 89 near Tuba City, Arizona on the Navajo Indian Reservation.

In February of 1981 Swift and Hafner filed an answer in Tribal Court denying liability and challenging jurisdiction of the Court. In November of 1981 Swift and Hafner filed a motion to dismiss for lack of jurisdiction. That motion was still pending in January of 1982 when the Tribal Court decided to stay its hand pending the resolution of this federal suit.

On December 16, 1981 Swift and Hafner (plaintiffs) filed the present action, naming the Johns and the Goldtooths (individual defendants), and certain Tribal entities and officials (Tribal defendants), to obtain a declaratory judgment that the Tribal Court lacks jurisdiction in *John v. Hafner.* The Complaint also seeks injunctive relief to preclude defendants from going forward with the Tribal Court action. As an alternative form of relief, plaintiffs request a writ of prohibition directed to the Tribal defendants to prohibit them from exercising jurisdiction in *John v. Hafner.*

## DISCUSSION

### Subject Matter Jurisdiction

■ Defendants have moved to dismiss on the ground that this Court lacks jurisdiction over the subject matter of this suit. The basic issue presented in this case is whether the Navajo Tribal Court has civil jurisdiction over non-Indians involved in an automobile accident on a U.S. Highway within the boundaries of the reservation. As outlined below, resolution of this issue requires an analysis of the Commerce Clause of the federal Constitution, statutes, treaties, and federal common law. As such, this action falls squarely within the general

federal question jurisdiction conferred by 28 U.S.C. § 1331.[2] *Cardin v. De La Cruz,* 671 F.2d 363, 365 (9th Cir. 1982) (*Cardin*); *Babbitt Ford, Inc. v. Navajo Indian Tribe,* 519 F.Supp. 418, 423–24 (D.Ariz.1981) (*Babbitt Ford*); *UNC Resources, Inc. v. Benally,* 518 F.Supp. 1046, 1048–49 (D.Ariz.1981) (*UNC Resources*).

### Tribal Sovereign Immunity

■ In their motion to dismiss, the Tribal defendants seek to invoke the doctrine of tribal sovereign immunity. As the Ninth Circuit has observed, "[i]t is a well-established rule that Indian tribes are immune from suit. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670 [1676], 56 L.Ed.2d 106 (1978)." *California ex rel. Cal. Dept. of Fish & Game v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir. 1979). The tribe's immunity also extends to tribal officials acting in their official capacity and within their scope of authority. *United States v. Oregon,* 657 F.2d 1009, 1012 n. 8 (9th Cir. 1981). Yet the tribe's sovereign immunity is not absolute. *Id.* at 1013. Given that the sovereign immunity is like all other aspects of tribal sovereignty, *see Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978) (*Santa Clara*), this Court concludes that tribal sovereign immunity is coextensive with tribal sovereignty. *Babbitt Ford, supra,* 519 F.Supp. at 425. This Court perceives no principled basis why sovereign immunity should bar an action if the conduct complained of is determined to be beyond the scope of the tribe's sovereign powers. This is especially true in a case, such as this, where tribal officials are named as defendants and only non-monetary relief is requested. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S.

---

1. The resolution provides in part: "The civil jurisdiction of the Courts of the Navajo Nation is hereby amended to include civil actions in which the defendant is a resident of Navajo Indian country, or has caused an action to occur in Navajo Indian country." Resolution CF–19–80.

2. Section 1331 provides: "The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *see also Beller v. Middendorf,* 632 F.2d 788, 797 (9th Cir. 1980). The Court will consider the sovereign immunity issue together with the merits in the following section of this opinion.

### Inherent Tribal Sovereignty

Defendants do not contend that Tribal Court jurisdiction over plaintiffs stems from any affirmative delegation thereof by Congress. *See Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 196, 98 S.Ct. 1011, 1014, 55 L.Ed.2d 209 (1978) (*Oliphant*). Rather, they maintain that the power to exercise such jurisdiction flows from the inherent sovereignty of the Tribe. Plaintiffs, on the other hand, raise a number of arguments in support of their position that the Tribe does not have the inherent sovereign power to require plaintiffs to appear and defend in *John v. Hafner.*

■ In weighing and assessing the validity of these arguments, the Court is guided by an ever increasing body of case law defining the limits of inherent tribal sovereignty. As the Supreme Court observed in *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (*Wheeler*), "[t]he sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance." *See United States v. Oregon, supra,* 657 F.2d at 1013. Tribal sovereignty is also restricted by inconsistent treaty provisions, *Wheeler, supra,* 435 U.S. at 323–24, 98 S.Ct. at 1086, *Oliphant, supra,* 435 U.S. at 206–08, 98 S.Ct. at 1019–1020, and by those portions of the federal Constitution that are "explicitly binding" on the tribes. *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe,* 634 F.2d 474, 476–77 (9th Cir. 1980); *Babbitt Ford, supra,* 519 F.Supp. at 425. Moreover, the tribes have been implicitly divested of many attributes

of sovereignty by virtue of their dependent status. *Montana v. United States,* 450 U.S. 544, 563, 101 S.Ct. 1245, 1257, 67 L.Ed.2d 493 (1981) (*Montana*); *Cardin, supra,* 671 F.2d at 366; *Knight v. Shoshone & Arapahoe Tribes,* 670 F.2d 900, 902 (10th Cir. 1982) (*Knight*); *UNC Resources, supra,* 518 F.Supp. at 1050–52.

■ With respect to the various treaty arguments raised in connection with Count 2 of the complaint, this Court has previously held that the Navajo Tribe has not relinquished by treaty civil jurisdiction over non-Indians. *UNC Resources, supra,* 518 F.Supp. at 1050; *see Babbitt Ford, supra,* 519 F.Supp. at 426–27. Plaintiffs have presented nothing to persuade the Court that a contrary result is mandated in the present case. Accordingly, Count 2 of the complaint will be dismissed.

Count 3 of the complaint alleges that the exercise of Tribal Court jurisdiction in *John v. Hafner* constitutes an unreasonable interference with interstate commerce. In support of this position plaintiffs raise two separate but related arguments, neither of which has merit in light of *Merrion v. Jicarilla Apache Tribe,* —— U.S. ——, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (*Merrion*).

■ Plaintiffs first contend that the Tribe has violated the Commerce Clause itself by attempting to assert jurisdiction over an interstate motor carrier involved in an accident on a U.S. Highway.[3] As the Supreme Court has noted, "reviewing tribal action under the Commerce Clause is not without conceptual difficulties." *Id.* 102 S.Ct. at 910. One of these conceptual difficulties is whether the Commerce Clause is even applicable to tribal action. The *Merrion* Court avoided the issue by simply assuming that tribes are bound by the Commerce Clause. *Id.* This Court will also decline to "break new ground in this area" since even if it is assumed that the Commerce Clause is binding on the Navajo

---

**3.** The Commerce Clause empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3.

Tribe, Tribal Court jurisdiction in *John v. Hafner* does not violate this Clause. *Id.*

In *Merrion* the Court analyzed the Jicarilla Apache Tribe's oil and gas severance tax in the same manner in which it would review the tax if it had been imposed by a state. *Id.* 102 S.Ct. at 911–12; *see Complete Auto Transit v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). In the present context, a proper analysis entails a balancing of the Tribe's interest against the burden imposed on the course of interstate commerce. *See Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981). Under the particular circumstances of this case, it appears that the burden on interstate commerce of requiring plaintiffs to appear in Tribal Court is outweighed by the Tribe's interest in providing a forum for the Johns and Goldtooths. The conclusion that the Commerce Clause does not preclude the exercise of Tribal Court jurisdiction in *John v. Hafner* is supported by the fact that states routinely require non-residents to answer in court for injuries arising from motor vehicle accidents within the state without transgressing the Commerce Clause. *See Kane v. New Jersey*, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222 (1916); *Hendrick v. Maryland*, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385 (1915); *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed.2d 1091 (1927).

■ Plaintiffs' second argument relating to interstate commerce is grounded on statutory provisions enacted by Congress pursuant to its powers under the Commerce Clause. Plaintiffs assert that in Title 23 of the United States Code Congress has established a comprehensive scheme for the construction and maintenance of highways and roads within the United States. They also suggest that by enacting Title 49 Congress

has adopted a pervasive framework for regulating the conduct of interstate motor carriers. From these provisions plaintiffs would conclude that Congress has preempted the field of regulating interstate motor carriers on public highways, thereby precluding the Tribe from taking any action which impacts in any manner upon this area.

The Court is unable to accept plaintiffs' conclusion. The Supreme Court recently reiterated its admonition that "a proper respect both for tribal sovereignty and for the plenary authority of Congress in this area [of preemption analysis] cautions that we tread lightly in the absence of clear indications of legislative intent."[4] *Merrion, supra*, 102 S.Ct. at 908, *quoting Santa Clara, supra*, 436 U.S. at 60, 98 S.Ct. at 1677. Plaintiffs have not cited anything in Titles 23 or 49 clearly indicating that Congress intended to restrict tribal court jurisdiction. Nor have they explained why state court jurisdiction over automobile accidents on U. S. Highways escapes the asserted conflict with federal policy. *See Merrion, supra*, 102 S.Ct. at 909. Since both of plaintiffs' interstate commerce arguments fail, Count 3 will be dismissed.

■ As might be expected in circumstances involving a tribe's relationship with non-Indians, the central issue of this case is whether the Tribe is divested of jurisdiction over plaintiffs as a result of their dependent status. As sovereigns predating the Constitution, Indian tribes had all of the powers traditionally associated with sovereignty. Upon their incorporation into the United States and their acceptance of its protection, however, the tribes necessarily were divested of some aspects of sovereignty which they had previously exercised. *See Wheeler, supra*, 435 U.S. at 322–23, 98

---

4. Even more recently, the Supreme Court stated: "We have consistently admonished that federal statutes and regulations relating the Tribes and tribal activities must be 'construed generously in order to comport with ... traditional notions of [Indian] sovereignty and with the federal policy of encouraging tribal inde-

pendence.'" *Ramah Navajo School Bd. v. Bureau of Revenue of New Mexico*, —— U.S. ——, 102 S.Ct. 3394, 3403, 73 L.Ed.2d 1174 (1982), *quoting White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980).

S.Ct. at 1085–1086. The tribes have been implicitly divested of the power to exercise criminal jurisdiction over non-Indians. *Oliphant, supra,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209. Moreover, as a general proposition, "the inherent sovereign powers of an Indian Tribe do not extend to the activities of nonmembers of the tribe." *Montana, supra,* 101 S.Ct. at 1258. Yet the *Montana* Court held that the tribes retain the power to regulate non-Indians on Indian lands within the reservation. *Id.* at 1254. The *Montana* decision also acknowledged that, with respect to land no longer owned by, or held in trust for the tribe, it may exercise civil or regulatory jurisdiction over non-Indians in two separate categories:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 1258 (citations omitted). *See Ashcroft v. United States Dept. of Interior,* 679

F.2d 196, 199 (9th Cir. 1982); *Cardin, supra,* 671 F.2d at 366; *Colville Confederated Tribe v. Walton,* 647 F.2d 42, 52 (9th Cir. 1981).

In applying the *Montana* analysis, a threshold question arises as to whether the site where the accident occurred, on U. S. Highway 89 within the boundaries of the reservation, is Indian or non-Indian land. If the highway is on Indian land then the Tribe would appear to have jurisdiction over plaintiffs. On the other hand, if the highway is more properly characterized as being on land no longer owned by or held in trust for the Tribe, then the Court must proceed to determine if the Tribe has jurisdiction under either of the categories delineated in *Montana.*

The parties have directed the Court's attention to a substantial body of conflicting case law dealing primarily with rights-of-way on Indian reservations. *Compare, e.g., Clairmont v. United States,* 225 U.S. 551, 32 S.Ct. 787, 56 L.Ed. 1201 (1912), *State v. Tucker,* 237 Wis. 310, 296 N.W. 645 (Wis. 1941) and *State ex rel. Peterson v. District Court,* 617 P.2d 1056, 1073–78 (Wyo.1980) (Rooney, J. dissenting) (suggesting rights-of-way are not Indian Land) *with Ortiz-Barraza v. United States,* 512 F.2d 1176, 1180 (9th Cir. 1975), *Ex parte Konaha,* 43 F.Supp. 747 (E.D.Wis.), *aff'd sub nom. Konaha v. Brown,* 131 F.2d 737 (7th Cir. 1942), *Buster v. Wright,* 135 F. 947 (8th Cir.), *appeal dismissed,* 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed. 334 (1905)[5] and *Enriquez v. Superior Court,* 115 Ariz. 342, 565 P.2d 522 (App.

---

5. In *Buster v. Wright,* the Eighth Circuit stated as follows:

> Neither the United States, nor a state, nor any other sovereignty loses the power to govern the people within its borders by the existence of towns and cities therein endowed with the usual powers of municipalities, nor by the ownership nor occupancy of the land within its territorial jurisdiction by citizens or foreigners .... The theory that the consent of a government to ... the conveyance of the title to lots or lands within [its territory] to private individuals exempts ... the owners or occupants of such lots from the exercise of all its governmental powers, ... is too unique and anomalous to invoke assent.

*Buster v. Wright,* 135 F. 947, 952 (8th Cir.), *appeal dismissed,* 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed. 334 (1905).

Although a portion of this language is quoted, indeed emphasized, in *Merrion, supra,* 102 S.Ct. at 905, it is obvious that *Buster v. Wright* is wholly inconsistent with the analysis of *Montana, supra,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493. Since this Court cannot believe that the *Merrion* Court intended to overrule *sub silentio* a decision it rendered only one year previously, this Court will attempt to follow the analysis of *Montana. See Cardin, supra,* 671 F.2d at 366–67 and n. 5.

1977) (suggesting rights-of-way remain Indian land). While these cases certainly are not irrelevant to the issue at hand, in the Court's view little purpose would be served by outlining the import of those cases here. It is not necessary because the character of U. S. Highway 89 becomes readily apparent upon an examination of the relevant statutory provisions and the general nature of Indian title.

■ It is well established that Indian title is "only a right of occupancy . . . extinguishable only by the United States." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974); *see Northwestern Bands of Shoshone Indians v. United States,* 324 U.S. 335, 338–39, 65 S.Ct. 690, 692, 89 L.Ed. 985 (1945); *Inupiat Community of Artic Slope v. United States,* 680 F.2d 122, 128–29 (Ct.Cl.1982); *In re Wilson,* 30 Cal.3d 21, 634 P.2d 363, 365–66, 177 Cal.Rptr. 336 (1981). It is also clear that "[a]n intent to extinguish Indian property rights is 'not lightly imputed to Congress.' *Menominee Tribe v. United States,* 391 U.S. 404, 413, 88 S.Ct. 1705, 1711, 20 L.Ed.2d 697 (1968). Such a drastic result requires 'a clear expression of congressional intent.' *United States v. Winnebago Tribe,* 542 F.2d 1002, 1005 (8th Cir. 1976). . . . Ambiguities in statutes are resolved in favor of the Indians. *United States v. Santa Fe Pacific R.R.,* 314 U.S. 339, 354, 62 S.Ct. 248, 255, 86 L.Ed. 260 (1941)." *United States v. Truckee-Carson Irrigation Dist.,* 649 F.2d 1286, 1298 (9th Cir. 1981). In the present case there is just such a clear expression of Congressional intent to extinguish Indian title in rights-of-way such as U. S. Highway 89.

In 1948 Congress enacted the Indian Rights-of-Way Act, 25 U.S.C. §§ 323–28, which empowers the Secretary of the Interior to grant rights-of-way for all purposes over Indian lands. *See Fredericks v. Mandel,* 650 F.2d 144, 147 (8th Cir. 1981); *Nebraska Pub. Power Dist. v. 100.95 Acres of Land,* 540 F.Supp. 592, 598 (D.Neb.1982). The right-of-way for U. S. Highway 89 was established pursuant to this statute. (Exhibit A to Plaintiffs' Response, Jan. 13, 1982). Before granting a right-of-way the Secretary must obtain the consent of the landowner under most circumstances. 25 U.S.C. § 324; 25 C.F.R. § 161.3. Plaintiffs assert without contradiction that consent was obtained in this case. Moreover, § 325 and 25 C.F.R. § 161.12 prohibit the grant of rights-of-way without the payment of just compensation. *Loring v. United States,* 610 F.2d 649, 650 (9th Cir. 1979). These compensation and consent provisions plainly indicate that Congress envisioned that Indian interest in the land affected would be extinguished. It is axiomatic that designating these lands as a U. S. Highway open to the general public is wholly inconsistent with an intent to allow the continued right of Indian occupancy. *See Ute Indian Tribe v. Utah,* 521 F.Supp. 1072, 1137–38 (D.Utah 1981). Accordingly, the Court concludes that the status of U. S. Highway 89 is equivalent to that of the non-Indian fee land in *Montana, supra,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493. *See Lower Brule Sioux Tribe v. South Dakota,* 540 F.Supp. 276, 291 (D.S.D.1982).

■ Having decided that plaintiffs' conduct occurred on non-Indian land, it remains to be determined whether the factual circumstances here fall within either of *Montana's* "broad categories" of tribal jurisdiction over such land. *Cardin, supra,* 671 F.2d at 366. Under the first jurisdictional class "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana, supra,* 101 S.Ct. at 1258. Defendants argue that by driving through the Navajo Reservation, plaintiffs have consented to Tribal Court jurisdiction over any accident which might occur. *See Hess v. Pawloski, supra,* 274 U.S. at 356–57, 47 S.Ct. at 633. This argument is based upon the assumption that the reservation is the same as a state

for purposes of implied consent. This assumption is unfounded.

More in the way of minimum contacts is required for a tribal court to assert personal jurisdiction over non-Indians than is required for a state court to exercise long-arm jurisdiction over a non-resident. *Babbitt Ford, supra,* 519 F.Supp. at 431; *see World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In addition, the ability of a state to require non-resident motorists to appear in state court is grounded primarily upon its power to exclude such motorists from highways within the state. *See Hess v. Pawloski, supra,* 274 U.S. at 356, 47 S.Ct. at 633. As a result of the establishment of the right-of-way, there is no corresponding power in the Navajo Tribe to exclude non-members from U. S. Highway 89. *Compare Merrion, supra,* 102 S.Ct. at 905–06. Furthermore, if the Court were to accept defendants' contention that mere presence within reservation boundaries is enough to allow tribal court jurisdiction, there would be no need to consider *Montana's* threshold distinction between those reservation lands owned by Indians and those owned by non-Indians. This Court does not believe that *Montana* may be so easily avoided. Plaintiffs have not entered into any "consensual relationship" with the Tribe or its members so as to justify the Tribe's exercise of jurisdiction in *John v. Hafner.*

Similarly, the present circumstances do not give rise to Tribal Court jurisdiction under *Montana's* second jurisdictional category "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana, supra,* 101 S.Ct. at 1258. The Court of course understands that an automobile accident can have a "direct effect on ... the economic security, or the health or welfare" of the individuals involved. Under this second portion of

the test, however, the focus is on the interests of the tribe rather than the interests of the individual members of the tribe. This distinction is reflected in the cases cited in *Montana,* as well as subsequent cases applying this aspect of the test. *Cardin, supra,* 671 F.2d 363 (tribe's interest in enforcing building, health and safety regulations); *Knight, supra,* 670 F.2d 900 (tribe's interest in enforcing zoning ordinance); *Babbitt Ford, supra,* 519 F.Supp. 418 (tribe's interest in enforcing repossession statute). Limiting tribal court jurisdiction over non-Indians to cases involving a direct effect on the tribe itself is also consistent with *Montana's* "general proposition" that tribal powers do not extend to nonmembers. *Montana, supra,* 101 S.Ct. at 1258.

In an attempt to demonstrate an impact upon the Tribe, counsel for the individual defendants stated at oral argument that as a result of the accident these defendants "may have" applied for benefits under Tribal social programs. Even if these defendants have accepted benefits from the Tribe, plaintiffs' conduct cannot be said to have a "direct effect" on the economic security of the Tribe. *Id.* Consequently, the instant fact situation does not fall within the second class of tribal court jurisdiction.

To summarize, the Navajo Tribe has not been divested of jurisdiction over plaintiffs by virtue of any treaty or the Commerce Clause. Neither has the Tribe lost jurisdiction as a result of any provision in Titles 23 or 49. By enacting the Indian Rights-of-Way Act, however, Congress has acted to extinguish Indian title in the land where the accident occurred. In light of the fact that the accident has had no "direct effect" on the Tribe, and since plaintiffs have not entered into a "consensual relationship" with the Tribe or its members, this situation falls squarely within *Montana's* general rule that tribes have been divested of jurisdiction over non-Indians as a result of their dependent status. Therefore, when the Navajo Tribal Council adopted the resolution extending civil jurisdiction to include cases

such as this, it was asserting a power it does not possess.[6] *See UNC Resources, supra,* 518 F.Supp. at 1052; *UNC Resources, Inc. v. Benally,* 514 F.Supp. 358, 363 (D.N.M. 1981).

*Remedy*

 As noted above, with respect to the Tribal defendants, plaintiffs seek injunctive relief or in the alternative a writ of prohibition pursuant to the All Writs Act. 28 U.S.C. § 1651.

The Court will decline to issue an injunction against the Tribal defendants. Despite plaintiffs' somewhat innovative way of naming these defendants, it is quite apparent that plaintiffs essentially desire to enjoin the tribal judicial proceeding itself. " 'It is well understood that an injunction to stay proceedings in courts of law is not directed against the Court itself but against the parties to the proceeding.' Lewis & Spelling, Law of Injunctions, 184, § 86." *Massman Const. Co. v. Nebraska Workmen's Compensation Court,* 141 Neb. 270, 3 N.W.2d 639, 643 (1942).

In light of the separate sovereignty of the Tribal Court, this Court will also decline to issue a writ of prohibition directed to any of the Tribal defendants. Writs of prohibition traditionally have been used by appellate courts to exert their revisory powers over inferior courts. *Ex parte Republic of Peru,* 318 U.S. 578, 582–83, 63 S.Ct. 793, 796, 87 L.Ed. 1014 (1943). There is no basis for this Court to depart from these traditional principles or to conclude that the Navajo Tribal Court is inferior to, rather than separate from this Court. Thus, as to the Tribal defendants, the only relief granted by this Court is the declaratory relief set forth above.

As to the individual defendants, the Court will grant plaintiffs' application for preliminary injunction. "For a preliminary injunction, a party must show either probable success and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships is tipped sharply in its favor." *Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 378 (9th Cir. 1982), *citing Miss Universe, Inc. v. Flesher,* 605 F.2d 1130, 1134 (9th Cir. 1979). Here, as in *UNC Resources, supra,* 518 F.Supp. at 1053, both tests have been met. *See also, UNC Resources, Inc. v. Benally, supra,* 514 F.Supp. at 363. As indicated above, this Court concludes that plaintiffs have prevailed on their claim that the Navajo Tribal Court lacks jurisdiction over them. They also would face irreparable injury if they were forced to appear and defend in a court without jurisdiction. Alternatively, this case presents serious questions and the balance of hardships tips in favor of plaintiffs since the individual defendants' injuries may be addressed in another court of competent jurisdiction.

Plaintiffs have no adequate remedy at law since in view of its prior decision in *Peterson v. Ford Motor Credit Co.,* 2 Nav.R. 36 (1979), it appears highly unlikely that the Navajo Tribal Court will refuse to exercise jurisdiction in *John v. Hafner.*[7] As this Court has previously consolidated the application for preliminary injunction with the hearing on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the injunction against the individual defendants will be permanent in nature. An appropriate order will issue.

## ORDER

The Court having filed herewith its opinion in this matter,

---

**6.** Since the Tribe is without the power to adopt Resolution CF–19–80 to the extent that purports to include cases such as this, there is no need in the context of this case to address the question of whether the resolution is invalid because it was not approved by the Secretary of the Interior. *See UNC Resources, supra,* 518 F.Supp. at 1049 n.7. In other words, it is not

necessary to consider whether the Tribe properly exercised a power it does not have.

**7.** Under the circumstances of this case, the Court will decline defendants' request to abstain from ruling on the issues in the case and to require plaintiffs to exhaust their tribal remedies.

IT IS ORDERED dismissing Counts 2 and 3 of the complaint.

IT IS FURTHER ORDERED denying the motion to dismiss filed by the Tribal defendants Robert Walters, the Navajo Tribal Courts, by and through its Chief Judge, Nelson McCabe, and the Navajo Indian Tribe, through its Chairman, Peter McDonald.

IT IS FURTHER ORDERED denying the motion to dismiss filed by the individual defendants Mary John, a widow, Katie Mae John, a single person, Katie Mae John, as next friend of Rodney John and Phillip Jerome John, minors, Mary Lou Goldtooth, individually and Mary Lou Goldtooth as next friend of Randi Lou Goldtooth and Raini Lou Goldtooth, minors.

IT IS FURTHER ORDERED enjoining the individual defendants listed above from further pursuing their claim against Swift Transportation, Inc. and Ronald M. Hafner, arising from the September 6, 1980 accident, in *John v. Hafner,* TC–CV–468–80 or in any other similar proceeding in the District Court of the Navajo Nation.

IT IS FURTHER ORDERED that the findings of fact and conclusions of law of this Court are as contained in the Opinion dated September 2, 1982 and filed contemporaneously herewith.