JAMES B. MOHR, District Attorney Vilas County
You ask whether the Lac du Flambeau Band of Lake Superior Chippewa Indians has exclusive jurisdiction to regulate land use *Page 192 
within the outer boundary of the Lac du Flambeau Reservation. You also ask whether the Band has authority to impose a moratorium on land division within the outer boundary of its reservation. It is my understanding that the Band recently rescinded its ordinance imposing such a moratorium and has no plan to reenact the ordinance within the foreseeable future. Consequently, this opinion will not address your second inquiry.
In this opinion, land tenure within the outer boundary of the Lac du Flambeau Reservation will be referred to either as "Indian land" or "fee land." Indian land includes land held in trust by the federal government, either for the Band or for individual Band members, together with land owned in fee by the Band and by Band members. Fee land refers to all land other than Indian land.
In my opinion, the Band has exclusive jurisdiction to zone all Indian land, and has jurisdiction concurrent with Vilas and Iron Counties to zone fee land located in each county unless it is established that county zoning would infringe on tribal self-government. If the exercise of county zoning jurisdiction infringes on tribal self-government, the Band would have exclusive zoning jurisdiction within the reservation.
The United States Supreme Court has repeatedly stated that Indian tribes retain attributes of sovereignty over both their members and their territory. See Merrion v. Jicarilla ApacheTribe, 102 S. Ct. 894 (1982); Montana v. United States, 450 U.S. 544,563 (1981); United States v. Mazurie, 419 U.S. 544, 557
(1975). A tribe's territorial jurisdiction has been held to include in many cases all land within its reservation boundaries.See, e.g., Buster v. Wright, 135 F. 947 (8th Cir. 1905), appealdismissed, 203 U.S. 599 (1906) and United States v. Wheeler,433 U.S. 313 (1978). A tribe's sovereign power is not derived from an Act of Congress, but is an inherent power which has never been extinguished. Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978). One aspect of a tribe's inherent sovereign power is the authority to zone all land within the reservation boundaries. See, e.g.,Knight v. Shoshone Arapahoe Indian Tribes, etc., 670 F.2d 900
(10th Cir. 1982). See also Confederated Salish Kootenai Tribes,etc. v. Namen, 665 F.2d 951, 962-64 (9th Cir. 1982), U.S. appealpending, No. 82-22 (July 1, 1982). *Page 193 
An Indian tribe has the power to zone all land within its reservation unless divested of such power by federal law or necessary implication of its dependent status. Cf. Merrion;Washington v. Confederated Tribes, 447 U.S. 134 (1980). Congress has not acted to deny Indian tribes the right to control through zoning the use of land located within their territorial jurisdiction. Nor, in my opinion, is such right denied by implication as a necessary result of an Indian tribe's dependent status.
In my opinion, the state has no power to zone Indian lands within the outer boundary of the Lac du Flambeau Reservation.Santa Rosa Band of Indians v. Kings County, 532 F.2d 655 (9th Cir. 1975), cert. denied, 425 U.S. 1038 (1977). See generally 65 Op. Att'y Gen. 276 (1976). It follows that the Band's zoning authority over such land vis-a-vis the state is exclusive. The issue of whether the state has authority to zone fee land within the Lac du Flambeau Reservation is less clear.
The authority of local governments to regulate land use through zoning was recognized by the Supreme Court in Village of Euclid,Ohio v. Ambler Realty Co., 272 U.S. 365 (1926). Such zoning is considered an exercise of the sovereign police power to protect, among other things, the health, safety, morals or general welfare of the community. Village of Belle Terre v. Boraas, 416 U.S. 1
(1974).
The basic test for determining whether state or local governments have any regulatory authority within reservation boundaries was considered by the Supreme Court in Williams v.Lee, 358 U.S. 218 (1959). The Court held: "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Id. at 220.
Since a tribe has a significant governmental interest in controlling any conduct or activity within its territorial jurisdiction that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 450 U.S. at 566, it is likely that state regulation of the same subject matter would infringe on the tribe's powers of self-government. Concurrent state and tribal regulation of land use within a reservation, or the existence of a situation where the state and the tribe each zone different areas of a reservation in a checkerboard fashion, would be impractical. *Page 194 
Unless both governmental authorities have similar long range planning goals, the two zoning plans may contradict and defeat each other. If such were the case, state zoning would probably infringe on tribal self-government and would be unenforceable.Cf. Mescalero Apache Tribe v. State of N.M., 630 F.2d 724 (10th Cir. 1980), vacated, 450 U.S. 1036 (1981), reinstated, 677 F.2d 55
(10th Cir. 1982); compare Washington.
If both plans are substantially similar, then the need for dual regulation is minimized. Because state regulation cannot be applied to Indian lands, tribal zoning appears to be the only means to achieve comprehensive land use planning on reservations with mixed land ownership.
Two important related issues that arise in the context of tribal zoning of all reservation land which involve the rights of non-Indian land-owners merit comment. First, because non-Indians do not usually have the right to participate in tribal governments, there must be concern for the equal protection and property rights of non-Indians in the administration of the zoning plan. Second, non-Indians must have a judicial forum within which to pursue those rights.
Under the Indian Civil Rights Act, 25 U.S.C. sec. 1302, no tribe shall: "(5) take any private property for a public use without just compensation; . . . (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."
These provisions, substantially similar to the relevant provisions of the United States Constitution, protect non-Indians as well as Indians in the enjoyment of their rights vis-a-vis tribal government. The rights of non-Indians are enforceable in the tribal courts. "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." Martinez, 436 U.S. at 65.
While there may be some concern that non-Indians are not represented in tribal governments, the Supreme Court has held that fact to be immaterial. Williams, 358 U.S. at 223; Mazurie,419 U.S. at 557-58. Cf. Merrion, 894 S. Ct. at 906-07. *Page 195 
In my opinion, the Lac du Flambeau Indian Band has exclusive authority to zone Indian land, and has concurrent jurisdiction with the state to zone fee land within the tribe's reservation boundaries unless county zoning would infringe on tribal self-government.
BCL:JDN